No. 10,461.

. BURROWS *v.* THE STATE.

CRIMINAL LAW.—*House-Breaking in Daytime.—Intent to Commit Felony.— Sufficiency of Evidence.— Verdict.—Supreme Court.*—Where the defendant is convicted of the offence defined in section 1930, R. S. 1881, and the evidence clearly shows his unlawful breaking and entry into the house, in the daytime, the Supreme Court will not disturb a verdict of guilty on the evidence, where the jury may have fairly inferred and found from the facts and circumstances shown, that such breaking and entry were done with intent to commit a larceny.

| 84 | 529 |
|----|-----|
| 154 | 180 |
| 84 | 529 |
| 161 | 277 |
| 161 | 278 |

From the Hendricks Circuit Court.

*L. F. Wilson, E. Wilson, J. A. Wilson* and *W. W. Spencer,* for appellant.

*D. P. Baldwin,* Attorney General, and *N. M. Taylor,* Prosecuting Attorney, for the State.

HOWK, J.—In this case the affidavit and information charged in substance that the appellant, Fred. Burrows, on or about the 24th day of June, 1882, in the daytime, at and in Hendricks county, did then and there unlawfully and feloniously enter the dwelling-house then and there owned and occupied by one James L. McCoun, then and there situate on lots 10 and 11, in Morgan's addition to the town of Danville, in said county, and did then and there, in said dwelling-house, unlawfully and feloniously attempt to commit a felony, to wit, to feloniously steal, take and carry away certain goods, chattels and money, belonging to said James L. McCoun, then and there being in said dwelling-house, but what particular goods, chattels and money, and the value of the same, were not known to and could not be specified by the said James L. McCoun, etc.

Upon the appellant's arraignment and his plea of not guilty, the issues joined were tried by a jury, and a verdict was returned finding him guilty as charged, and assessing his punishment at confinement in the house of refuge until he was twenty-one years of age, unless sooner reformed. Over his motion for a new trial and his exception saved, the court rendered judgment on the verdict.

The sufficiency of the facts stated in the affidavit and information to constitute a public offence is called in question for the first time by assignments of error in this court. The offence charged, or intended to be charged, is a new one in this State, having been defined and its punishment prescribed for the first time in the act of April 14th, 1881, " concerning public offences and their punishment." In section 29 of

that act, being section 1930, R. S. 1881, it is provided in substance as follows:

"Whoever, in the day-time or night-time, enters any dwelling-house, * * * * and attempts to commit a felony, shall be imprisoned in the State prison not more than fourteen years nor less than two years, and disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

It seems to us that the affidavit and information in this case have stated facts sufficient to charge the appellant with the commission of the offence which is defined in this section of the statute. In their brief of this case the appellant's counsel have not pointed out any objection, nor can we see any, to either the form or substance of the affidavit or information, which would authorize the reversal of the judgment below.

The only error complained of, in argument by the appellant's counsel, is the decision of the court in overruling the motion for a new trial. The causes assigned for such new trial were, that the verdict of the jury was not sustained by the evidence, and was contrary to law. It is earnestly insisted by the appellant's counsel, that there was no sufficient evidence of the appellant's attempt to commit the particular felony charged in the affidavit and information. The evidence of the prosecuting witness, James L. McCoun, was in substance, as follows: "I am acquainted with the defendant. On the morning of the 24th day of June, 1882, at about half past three o'clock—it was in the daytime—I heard a noise in my room; it sounded like the rustling of straw under the carpet; I first thought it was my son; I heard the noise a second time; I looked and saw some person at the foot of my bed, in a stooping or kneeling position, or in the act of coming from under the bed; we saw each other mutually; our eyes met; I looked him square in the face; I knew him; it was Fred. Burrows; he immediately turned from me and escaped through the open window; I went to the window and saw him at or near the foot of the ladder, which

some person had placed at my window; I saw him and another person run out of the yard into the street, and then down the sidewalk; I think I know who the other person was; I dressed and went after the marshal, Mr. Wills, who was in bed; I afterwards saw some tracks going west and north, in the direction of the defendant's home; one track was made by a person with shoes or boots; the other was made by a person in his bare feet; the boy whom I saw in the room was barefooted; I saw his feet; my opinion is that the tracks made by the bare feet were about the size of defendant's feet; I missed from my house, that morning, my pants; there was nothing in the pockets but a pocket-knife and my store-key; the pants were found; I only know where by hearsay; my knife and key were given back to me by the person who found them; I had some money in the house, part belonging to myself and part to Co., about $80, but I had removed it from my pant's pocket before going to bed the night before; I think the defendant was in my house for the purpose of stealing; the house belonged to me, and is situated on lots 10 and 11, in Morgan's addition to the town of Danville, Indiana, and I was occupying it at the time as a dwelling-house; the goods and money and furniture in it belong to myself and family; I do not know just what property, nor the value of the same, that the defendant attempted to steal; the window to which the ladder led, and out of which the defendant escaped, was left up the night before as far as it would go, and any one could go through it without moving it; this occurred in Hendricks county, State of Indiana; I have known defendant for four or five years; he lives within two or three squares from my house; the doors and windows below, in the first story of my house, were all fastened that night."

The cross-examination of this witness made no material change in his evidence in chief, the substance of which we have given, as it appears in the record. On the trial, other evidence was introduced, of which some strongly corrobo-

rated, and some was utterly inconsistent with the above quoted evidence of the witness, McCoun. The jury, however, were the judges of the evidence, and of the credibility of the witnesses, and in a criminal case such as this they had the constitutional right "to determine the law and the facts." Section 64, R. S. 1881. It is not claimed by the appellant's counsel, as we understand their argument, that the jury might not have fairly found from the evidence the unlawful entry of the appellant into McCoun's dwelling-house, in the daytime of June 24th, 1882; but counsel earnestly insist that the evidence did not authorize a finding of the fact, necessary to the appellant's conviction of the offence charged, that he then and there attempted to commit the larceny of Mc-Coun's goods, as charged in the affidavit and information. We are of the opinion, however, that the facts and circumstances detailed in McCoun's evidence were abundantly sufficient, in the absence of any explanation, to authorize the jury to find that the appellant then and there attempted to commit the particular felony wherewith he stood charged.

The judgment is affirmed, with costs.